# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| IRMA GOMEZ, Individually and on Behalf of All Others Similarly Situated, | Case No.: 17-cv-72 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| MAURY COBB, ATTORNEY AT LAW, LLC, | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Irma Gomez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Maury Cobb, Attorney at Law, LLC ("Maury Cobb") is a debt collection agency with its principal offices located at 600 Beacon Pkwy West #300B, Birmingham, AL 35209.

6. Maury Cobb is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Maury Cobb is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Maury Cobb is a debt collector as defined in 15 U.S.C. § 1692a.

**FACTS**

8. On or about September 16, 2016, Maury Cobb mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "T-MOBILE." A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

9. Upon information and belief, the alleged debt that Maury Cobb was attempting to collect was a cell phone service account, used only for personal, family or household purposes.

10. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Maury Cobb to attempt to collect alleged debts.

12. Upon information and belief, <u>Exhibit A</u> is the first written communication that Maury Cobb sent to Plaintiff regarding the alleged debt to which <u>Exhibit A</u> refers.

13. <u>Exhibit A</u> contains the following text:

> MAURY COBB ATTORNEY AT LAW LLC is a debt collector. This communication is an attempt to collect a debt. Any information obtained that will assist in collecting the debt will be used for that purpose. The above-referenced debt will be assumed valid by this debt collector unless within 30 days from receiving this, you dispute the validity of the debt or any portion thereof. If you dispute the debt or any portion thereof in writing within 30 days of receiving this, we will obtain verification of the debt or a copy of a judgment if one has been entered against you for the debt, and a copy of such verification or judgment will be mailed to you. If the name and address of the current creditor is different from the name and address of the original creditor, we will provide you with the name and address of the original creditor, if you request that information in writing within thirty days from receiving this. No attorney in this office has personally reviewed the merits of the creditor's claim, nor can this firm take legal action against you.

14. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

15. Exhibit A also contains the following settlement offer:

> As an authorized agent for T-MOBILE, MAURY COBB ATTORNEY AT LAW LLC is pleased to inform you that T-MOBILE has authorized us to offer you a settlement on your account 18101956. By taking advantage of this offer, you will be able to settle your account with T-MOBILE for the amount of $1726.52. This will be a savings of $1146.22 to you. In order to take this offer, the settlement amount must be paid in one payment and is only valid until 10/31/2016. Acceptance or rejection of the proposed settlement offer in no ways eliminates your right to dispute the debt or any portion thereof.

16. The above offer requires that "the settlement amount must be paid in one payment and is only valid until 10/31/2016" if the consumer wants to take advantage of it. Exhibit A.

17. Thus, in order to accept the settlement offer, Exhibit A requires Plaintiff to make a payment by 10/31/2016. Exhibit A.

18. If Exhibit A was actually mailed on September 16, 2016, the 30 day validation period identified in Exhibit A would end only a few days before the settlement offer in Exhibit A expires. *See* 15 U.S.C. § 1692g(a).

## *FDCPA Violations*

19. Exhibit A is confusing to the unsophisticated consumer because they demand a payment within the validation period or shortly thereafter, but do not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

20. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit A.

3

21. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

22. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

23. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

24. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

25. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in <u>Exhibit A</u>. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

26. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

27. Defendant did not include explanatory language in Exhibit A, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

28. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

29. Plaintiff was confused by Exhibit A.

30. The unsophisticated consumer would be confused by Exhibit A.

31. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

32. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708,

5

2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

34. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

## COUNT I – FDCPA

35. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

36. The statement on Exhibit A that "the settlement amount must be paid in one payment and is only valid until 10/31/2016" conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

6

37. <u>Exhibit A</u> is confusing, deceptive, and/or misleading to the unsophisticated consumer.

38. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

39. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

40. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

41. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## CLASS ALLEGATIONS

42. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 18, 2016 up to and including January 18, 2017, inclusive, (e) that was not returned by the postal service.

43. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

44. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10), and 1692g.

45. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

46. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

47. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

48. Plaintiff hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 18, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110

(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com